Good morning, Your Honor. May it please the Court, my name is Wendy Gerbeth and I represent the appellate Mario Estevan-Hernandez. In this case, I'd like to start with the issue of the protective sweep that is argued by the government because I think that's really the crux of the whole case. Can I ask you, just sort of before you get into the details, almost a bottom line question? And that is, if you were right on just about everything that you assert, what difference would it make? I believe it would make... Because he, there's no question about the 4.6 kilos. That's, I can see that. That's absolutely there and his conviction stands on that basis. That's correct. I believe it applies to the sentence. Well, then tell me why, because even if the 27 or whatever kilos found in the apartment were not available for use in conviction, it's relevant conduct that bears on the sentence. So why did it make any difference on anything? It would make a difference because the court would not be required. There is a provision in the guidelines for relevant conduct that would allow that to be considered at the court's discretion. But the guidelines are also discretionary at this point, so the court would... Is there a snowball's chance that the district court would not have included the kilos that he said were in and were in his apartment? I believe that there is a chance that the district court would have done that, because I think that looking at in fairness and as far as what should be addressed, it was certainly within the court's discretion. I can't say for certain that the court would have, but it would have been within the court's discretion. Okay. Now, starting with the protective sweep again, as we've argued in the papers, there was absolutely no specific facts that the government was able to point to, or that the witnesses for the government were able to point to, suggesting that there was any kind of exigency or any kind of urgency in order to go in and look for people in the apartment. There was one additional case cited by the government in their 28J letter, the Pow Pow case, that the government used to say that under certain circumstances, a protective sweep can be performed even though someone is arrested outside the apartment. I wanted to distinguish that case because in that case, like all the other cases cited by the government, the sweep came after an ongoing investigation. In that case, the police had information that these individuals had been involved in armed robberies, and that also they suspected that someone else who was in the house was a co-conspirator. In addition, the house was being used as a gambling arena, and the police had seen seven people exit the house beforehand. So they had additional information as a result of an ongoing investigation that individuals might be armed and dangerous in the house. We have a lot of authority, counsel, that if they hadn't gone in then, they would have gotten a warrant, and there would have been inevitable discovery. I don't believe so. As the case, I've cited a case that particularly addresses that point. If we look at inevitable discovery in the context of whether or not there is an ability to get a search warrant, it eviscerates the whole search warrant basis. Yes, I'm not exactly fond of that authority, but that's my understanding of what our court has held. Well, the specific case in here is United States v. Washington, and in the Washington case, they specifically looked at that issue and decided that because it would encourage not getting a search warrant where a search warrant is justified, that using inevitable discovery would be a way to circumvent the warrant requirement. Yeah, but I'm puzzled because nothing was discovered in the protective sweep. I mean, they just went and came out, and then they asked him whether there was more drugs in the apartment, and he said yes. And they got his consent to go in, and then they found the cocaine. In that circumstance, it seems clear that it's either inevitable discovery or it just didn't matter. Well, I believe it did, and the government has not addressed the taint analysis at all. What did it taint? If the protective sweep was invalid, it would have tainted any subsequent consent given by Mr. Hernandez. Why? Because it had nothing to do with it, did it? Well, yes, it did. He saw armed individuals going in and already being in his apartment and the apartments of his neighbors. Anything for him to consent, if he hadn't consented, would have been futile. And there are cases that look to that. If someone is in the area, and if he knows that he's already seen the apartments being searched, then that is an inevitable – that you have to look at the taint. And in this case, the alleged consent that he gave was given within minutes of him being arrested and after he had already seen the agents going into the apartment. So with temporal proximity, the first factor, it was very soon after the original illegal search or the illegal protective sweep. In addition, there were no intervening circumstances involved. He was continuously handcuffed in custody in a highly coercive environment. So to say that it wouldn't have mattered, it would have mattered. It would have affected his consent, the voluntariness of his consent. And without having previously seen that, I believe that the result would have been different. But they didn't see the drugs, though, during the protective sweep? They just went in, went out? Well, they were in there for several minutes. There was no testimony that they did or did not see them. And with that, I will reserve unless there are further questions. Troy. Good morning. May it please the Court, Mark Rahy for the United States. Your Honors, the government will stand on the harmless error analysis in this case. And I don't know if we could have said it any better than Judge Reimer posed it in the question to my opponent, which is that even if this Court assumes everything should have been suppressed, that the defense claim should have been suppressed, it still doesn't matter. And now we have a ---- Well, your counsel makes a valid point that although it could be relevant conduct, that is a discretionary call. But still, when this Court looks to a harmless error analysis, it has to look at kind of the continuum of possibilities here, Your Honor. Even post-Booker, the Court still has to make a correct calculation of the sentencing guidelines. The cases that we cite, Kim, MacGyver, and Haynes, all state that when it's relevant conduct, it has to be considered. Here, I don't think there's any conceivable argument that the cocaine that was found in his apartment is not relevant conduct. Because even by his own post-arrest statement, he said that that cocaine, somebody was coming the very next day to pick up not only the 28 packages found in his closet, but also the packages that he was taking out from the hood of his car at the time of his arrest. So, yeah, I mean, maybe in a metaphysical sense, we can't say with absolute certainty, but I think this case is as close as that's going to get. And if the whole point of the harmless error doctrine is to not engage in futile waste of resources, I think this is a good application of that doctrine. Because you have to keep in mind, again, even this sentencing, although the underlying conduct happened in November of 2004, this defendant was sentenced after Booker. So the court already knew that it had maximum discretion under the 3553A factors to depart. And the other thing that I think really is just sort of a practical point here, this defendant got a 46-month sentence. When I checked the guidelines the other day, if you look at the base offense level just for the 4.7 kilos that were found in his automobile, that's a base offense 30, which already, I believe, has a low end somewhere in the high 90s, if not the low 100s. And then if you add the other 28, it goes to a base offense 34. This defendant got a 46-month sentence. I mean, that's less than a half. So he obviously already got the mitigation that the district court found was sufficient. On this record, I don't know why this court could entertain any serious doubt that the sentence would be any different. But just with that harmless error argument preserved, I did want to talk a little about the protective sweep. In this case, in Maryland v. Bowie, the Supreme Court made clear that there are two kinds of protective sweeps. There's one that doesn't require any suspicion whatsoever. And the language that they use about that, and that's at 494 United States Reports at page 334, they say, as an incident to arrest, officers can, as a precautionary matter, without probable cause or reasonable suspicion, look in closets or other spaces that are immediately adjoining the place of arrest from which an attack could be immediately launched. In this case, it was only 30 feet that separated the point of arrest from the door of the apartment. And I doubt that that's even the distance from here to the back of this courtroom. On that kind of a record, Your Honor, I think it's a fair inference to say that these officers had reason to believe, or they didn't need it, but it was just 30 yards away. They had concern. Thirty yards or 30 feet? Thirty feet. I'm sorry. They had concern that they could be immediately attacked from that spot. So I don't think that it offends the Fourth Amendment to find that that limited protective sweep, and we set up a motion to accept the videotape. They weren't in for two minutes. According to that videotape, they were only in for 30 seconds. And when they come out, they're not holding anything in their hands. It's a point that was also made. They didn't find any evidence in that protective sweep, and they certainly didn't come back and confront the defendant with it. But they're in for only 30 seconds, and it's for their safety. That should be reasonable. But even if this court did require some kind of articulable facts, in this case, what did the officers know? They knew because it was a controlled delivery that the car had 4.7 kilos of cocaine. That is obviously a distributable amount worth a lot of money. As soon as the guy comes to the defendant, pardon me, comes back to his apartment, he's not sitting around for a couple hours. He, within a few minutes, after making two trips back and forth to the apartment, starts unloading these drugs. And the record's clear that at the time of his arrest, he was unloading the drugs. So it's a valuable amount of drugs. It's in the process of being unloaded. It's not in a static state. And the officers had just seen this defendant pick up this vehicle at a Kmart a few miles away, bring it to this location, and go in and out of apartments twice. There can be different kind of records that support protective sweeps, but I would submit that even if this court is concerned about this record and wants some sort of articulable facts, that that constellation of facts is enough to justify the search under the second buoy search if it's so needed. But aside from that, I think this court has the supplemental authorities that we put in our 28J letter. Again, you don't even need to get to all these conceitedly interesting issues. They may be somewhat thorny constitutional issues. The doctrine of this court is always clear. If you're looking for the easiest way to dispose of this case without having to reach all these Fourth and Fifth Amendment issues, you have harmless error. It's right there. And on that, we'd submit unless the court has any further questions. Questions? Great. Thank you, Mr. Ray. Ms. Graboff? Just very briefly, I want to address the government's analysis of the buoy and the search in the immediately adjoining area. I don't know under what definition 30 to 50 feet could be conceived as an immediately adjoining area. Also, this is a different situation than the one in buoy in the sense that the defendant and the court has now by this time seen the videotape, where they had the defendant isolated by the car was down at the end of the apartment complex and they were not out in front. The agents could have stayed away from the apartments and still arrested the defendant and had him under their control. It wasn't a situation where they had to go into the apartments or in front of the apartments in order to secure the cocaine that was in the car or to secure the defendant. And that, I believe, is a distinguishing factor. In addition, the government's argument that there was an additional or there was some sense of urgency just because it was a distributable quantity of drugs would justify a protective sweep in any case involving drugs, and it's not meant to do that. Under the government's analysis, any time you had a distributable quantity of drugs, even if there was no other indicia that there were dangerous individuals, the government would be able to conduct a protective sweep. And with that, I would submit, unless there's questions. Okay. Thank you, counsel, for your argument. The matter just argued will be submitted next Tuesday.
judges: Fletcher, Rymer, Beistline